Filed 7/23/26  Moss v. GoDaddy.com CA2/4

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| MICHAEL MOSS et al., <br><br> Plaintiffs and Appellants, <br><br> v. <br><br> GODADDY.COM, LLC, et al., <br><br> Defendants and Respondents. | B346188, B347269 <br> (Los Angeles County <br> Super. Ct. No. 23STCV31166) |

APPEAL from judgment of the Superior Court of the County of Los Angeles, Carolyn B. Kuhl, Judge.  Affirmed.

Singleton Schreiber, Benjamin Siminou, Jonna D. Lothyan, Christopher R. Rodriguez and Andrew D. Bluth, for Plaintiffs and Appellants.

Cozen O'Connor, Robert S. Clark and Nathan M. Dooley, for Defendants and Respondents.

Plaintiffs Michael Moss, Jaeis Chon, William Vaz, and Fuad Ahwal appeal from a judgment of dismissal following an

order sustaining the demurrer of defendants GoDaddy.com, LLC (GoDaddy), GoDaddy Payments, LLC, and Poynt, LLC (collectively, defendants) to the operative first amended class action complaint.  Plaintiffs alleged that defendants violated Civil Code section 1670.8.[1]  This statute, sometimes known as the "Yelp law," provides that contracts for the sale of consumer goods or services may not include provisions waiving a consumer's right to make statements about the seller or the purchased goods or services.  (§ 1670.8, subd. (a)(1).)  The law makes it unlawful for a seller to threaten or seek to enforce such waivers (*id.*, subd. (a)(2)) and permits consumers to recover certain civil penalties (*id.*, subd. (c)).

Plaintiffs alleged that defendants violated the statute by requiring them to agree to terms of service that included prohibited waiver language.  They did not, however, allege that defendants made threats or took actions to enforce the terms of service or otherwise penalize them.  We conclude that plaintiffs failed to state a claim entitling them to civil penalties and affirm the judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

We draw the following facts from the allegations in the first amended complaint.

GoDaddy, a domain registrar and web hosting company, operated an online store through which it sold products and services such as domain names, web hosting, and security services.

---

[1]    Undesignated statutory references in this opinion are to the Civil Code.

Plaintiffs were consumers who made purchases through the online store. During the checkout process, they were required to accept GoDaddy's Universal Terms of Service. According to plaintiffs, the terms of service forbade them from "making any statement that 'contains false or deceptive language or unsubstantiated or comparative claims regarding GoDaddy or GoDaddy's Services.'" They also prohibited plaintiffs from posting "any 'content on [GoDaddy's] website that could result in damage to GoDaddy's business, operations, reputation or shareholders . . . .'"

Plaintiffs asserted a single cause of action for violation of section 1670.8. They alleged the above-quoted language was prohibited by the statute, and by including it in the terms of service, defendants sought to have plaintiffs waive their rights to make protected statements.[2] They alleged entitlement to civil penalties for defendants' repeated violations of the law.

Defendants demurred to the first amended complaint. Among other grounds, they contended that section 1670.8 did not provide a private right of action for violations of subdivision (a)(1) alone. The trial court sustained the demurrer without leave to amend.

---

[2] Plaintiffs do not claim they were dissatisfied with any product or service they purchased from defendants or that they wished to express such dissatisfaction. They also do not allege defendants threatened or sought to enforce any purportedly unlawful provision against them. Instead, they contend that "each and every customer" who purchased products or services from defendants' online store during the period covered by the statute of limitations is entitled to recover civil penalties solely because defendants' Universal Terms of Service allegedly contained language prohibited by section 1670.8, subdivision (a)(1).

3

Plaintiffs appealed from the ensuing judgment of dismissal.[3]

## DISCUSSION

### A.    Request for Judicial Notice

On appeal, both parties filed requests for judicial notice. The requests are denied.  (*Jordache Enterprises, Inc. v. Brobeck, Phleger & Harrison* (1998) 18 Cal.4th 739, 748, fn. 6 [declining to take judicial notice of materials that were not "necessary, helpful, or relevant"]; see *Quelimane Co. v. Stewart Title Guaranty Co.* (1998) 19 Cal.4th 26, 45, fn. 9 [noting it is unnecessary to request judicial notice of published legislative history material; citation to the material is sufficient].)

### B.    Standard of Review

We review an order sustaining a demurrer de novo. (*California Logistics, Inc. v. State of California* (2008) 161 Cal.App.4th 242, 247.)  "We assume the truth of the allegations in the complaint, but do not assume the truth of the contentions, deductions, or conclusions of law."  (*Ibid.*)

### C.    Overview of Section 1670.8

Subdivision (a) of section 1670.8 provides:

"(1) A contract or proposed contract for the sale or lease of consumer goods or services may not include a provision waiving the consumer's right to make any statement regarding the seller or lessor or

---

[3]    Plaintiffs filed two notices of appeal, one from the order and the judgment and one from the judgment only.  On our own motion, we consolidate the appeals.

its employees or agents, or concerning the goods or services.

"(2) It shall be unlawful to threaten or to seek to enforce a provision made unlawful under this section, or to otherwise penalize a consumer for making any statement protected under this section."

Subdivision (c) provides that "[a]ny person who violates this section shall be subject to a civil penalty not to exceed two thousand five hundred dollars ($2,500) for the first violation, and five thousand dollars ($5,000) for the second and for each subsequent violation, to be assessed and collected in a civil action brought by the consumer . . . ."

**D.  Section 1670.8 Does Not Afford a Private Right of Action for Violations of Subdivision (a)(1) Alone**

Plaintiffs contend the trial court erred in finding that a violation of subdivision (a)(1) was insufficient to state a cause of action for violation of section 1670.8 absent allegations that the defendants also violated subdivision (a)(2).  They argue the text and legislative history make it clear that the law created a private right of action for violations of either subdivision.

*1.  Text of Section 1670.8*

"A private party can sue for violation of a statute only where the statute in question allows it."  (*Mayron v. Google LLC* (2020) 54 Cal.App.5th 566, 571 (*Mayron*).) "The burden of persuasion is with the party claiming a statutory right to sue." (*San Diegans for Open Government v. Public Facilities Financing Authority of City of San Diego* (2019) 8 Cal.5th 733, 739 (*San Diegans*).)

5

Courts first examine the text of the statute to determine if there is a "'clear, understandable, unmistakable' indication of intent to allow a private right of action." (*Mayron, supra,* 54 Cal.App.5th at p. 571, quoting *Lu v. Hawaiian Gardens Casino, Inc.* (2010) 50 Cal.4th 592, 597.) "It is not enough that the statutory text suggests such a right. [Citation.] A clear indication means the text *cannot be reasonably susceptible of competing interpretations.*" (*Id.* at pp. 571–572, italics added.)

In requesting judicial notice of trial court orders that have examined section 1670.8, plaintiffs describe the statute as just that: "'*reasonably susceptible to more than one interpretation.*'" (Italics added). If the statute is susceptible to multiple interpretations, plaintiffs are foreclosed from showing the opposite—a "clear" indication that the Legislature intended to confer the right to recover penalties whenever a contract prohibits a consumer from making protected statements. (*Mayron, supra,* 54 Cal.App.5th at p. 572.)

We agree that the text of the statute fails to provide a clear and unmistakable intent to allow a private right of action for violations of subdivision (a)(1). Though the parties cite no precedential case deciding the issue, a federal district court has analyzed it. It concluded: "[S]ubsection (a)(1) voids non-disparagement clauses in contracts for the sale or lease of goods and services, while subsection (a)(2) creates a cause of action against those who attempt to enforce the clauses voided by subsection (a)(1). This distinction comes from the fact that only subsection (a)(2) contains language referring to unlawful

6

conduct." (*Shofet v. Zillow Inc.* (C.D. Cal. 2024) 741 F.Supp.3d 866, 876 (*Shofet*).[4])

This reading accounts for the different language and structure employed in subdivisions (a)(1) and (a)(2). Subdivision (a)(1) states that waiver language "may not" be included in contracts and appears to be a prohibition on content. This language is distinct from the more definitive language used in subdivision (a)(2), which states, "*It shall be unlawful* to threaten or to seek to enforce a provision made unlawful under this section . . . ." (§ 1670.8, subd. (a)(2), italics added.) From the Legislature's choice of different words in subsection (a)(1) and (a)(2), we can presume it intended the two subdivisions to have different meanings. (*In re Anthony Q.* (2016) 5 Cal.App.5th 336, 351, fn. 9 ["We generally presume the Legislature intended a difference in meaning when it used different language in different provisions in the same legislation"].)

In view of these differences, one reasonable interpretation is that the Legislature intended for subdivision (a)(2) to make a threat or attempt to enforce a provision prohibited by subdivision (a)(1) an act that triggers penalties. Harmonizing the two subdivisions in this manner avoids rendering parts of the statute superfluous. (*Wells v. One2One Learning Foundation* (2006) 39 Cal.4th 1164, 1207.) "[I]f the mere inclusion of a non-

---

[4] Subsequently, the district court granted the plaintiffs' motion for reconsideration and remanded the case to state court on the ground that plaintiffs lacked Article III standing. (*Shofet v. Zillow Inc.* (C.D.Cal. Oct. 3, 2024, No. 2:24-cv-00092-SVW-BFM) 2024 U.S.Dist. Lexis 236082.) The court did not revisit its analysis of section 1670.8. We treat the court's earlier decision as persuasive, non-binding, authority.

disparagement clause is actionable under subsection (a)(1), then subsection (a)(2)'s prohibition on threatening to enforce such a clause becomes superfluous; all such instances would already be captured by subsection (a)(1)." (*Shofet, supra,* 741 F.Supp.3d at p. 876.)

Plaintiffs have not shown that section 1670.8's text clearly and unmistakably creates a private right of action whenever a waiver described in subdivision (a)(1) is included in a contract. The differences between the two subdivisions permit a reasonable inference that the Legislature intended for subdivision (a)(1) to operate as a shield and for subdivision (a)(2) to provide the consumer with a sword when a seller threatens or takes action to enforce a waiver to stifle consumer speech. (See *Shofet, supra*, 741 F.Supp.3d at p. 876.)

### 2. *Section 1670.8's Legislative History*

Plaintiffs also fail to show that the legislative history clearly establishes a private right of action accrues whenever prohibited waiver language is included in a contract. (*Mayron, supra*, 54 Cal.App.5th at p. 573 [legislative history can confirm the Legislature's intent to create a private cause of action, but "it must be 'clear' that was the intent"].)

The parties agree that Assembly Bill No. 2365 (2013–2014 Reg. Sess.) (Assembly Bill 2365) was introduced after national media outlets reported a dispute between a couple and an online retailer. When the couple posted a negative review about the retailer online, the retailer claimed they violated a non-disparagement clause in a contract that they accepted when they checked a box to complete their online order. The contract stated the breach entitled the retailer to collect liquidated damages of

8

$3,500. (Assem. Com. on Judiciary, Analysis of Assem. Bill No. 2365 (2013–2014 Reg. Sess.) Apr. 22, 2014, p. 3.) When the couple refused to remove their review, the retailer demanded they pay the $3,500 penalty and reported the debt to a credit reporting agency. (*Id.* at pp. 3, 4.) The bill's author introduced the measure because consumers "should not be financially penalized for providing honest online statements relative to their online retail transaction experience," and state and federal law did not yet make clear that such clauses in consumer contracts were void and unenforceable. (*Id.* at p. 3.)

As introduced, section 1, subdivision (a) of Assembly Bill 2365 provided:

> "A contract or proposed contract for the sale or lease of consumer goods or services is unlawful if it includes a provision requiring the consumer to waive his or her right to make any statement regarding the consumer's experience with the business, or to threaten or seek to enforce such a provision or to otherwise penalize a consumer for making such a statement, unless the waiver of this right was knowing, voluntary, and intelligent. A provision in violation of this section is unconscionable and against public policy."

(Assem. Bill No. 2365 (2013–2014 Reg. Sess.) as introduced Feb. 21, 2014.) This version of subdivision (a) was linguistically flawed, as it made a contract "unlawful if it includes" "to threaten or seek to enforce" a waiver provision. (*Ibid.*)

An April 2014 amendment addressed this issue and separated subdivision (a) into two subparts. (Assem. Amend. to Assem. Bill No. 2365 (2013–2014 Reg. Sess.) Apr. 24, 2014.) New subdivision (a)(1) retained the language that contracts and

9

proposed contracts within its scope would be "unlawful" if they included a proscribed waiver.[5] (*Ibid*.) New subdivision (a)(2) stated: "It shall be unlawful to threaten or to seek to enforce a provision made unlawful under this section, or to otherwise penalize a consumer for making any statement regarding the consumer's experience with a seller or lessor, or its employees or agent, unless the consumer has knowingly, voluntarily, and intelligently waived his or her right to do so." (*Ibid*.)

A Senate amendment in August 2014 struck the language in subdivision (a)(1) that a contract "is unlawful if it includes" a waiver. It was replaced with a statement that a contract "may not include" such a provision. (Sen. Amend. to Assem. Bill No. 2365 (2013–2014 Reg. Sess.) Aug. 11, 2014.) The bill was enacted in this form.

The evolution of language after a bill's original introduction can offer insight into the Legislature's intent. (*People v. Tokash* (2000) 79 Cal.App.4th 1373, 1378.) Here, Assembly Bill 2365's history suggests the Legislature initially intended to designate both the existence of prohibited waivers and actions taken to enforce such waivers as unlawful. The Legislature later decided to treat these matters differently, breaking them apart and declining to describe contracts containing prohibited waivers as "unlawful." It restated subdivision (a)(1) so that it describes what provisions a contract "may not" include. As enacted, only

---

[5] It provided: "A contract or proposed contract for the sale or lease of consumer goods or services is unlawful if it includes a provision requiring the consumer to waive his or her right to make any statement regarding the consumer's experience with the seller or lessor or its employees or agents, unless the waiver of this right was knowing, voluntary, and intelligent."

subdivision (a)(2) identifies unlawful actions:  threatening enforcement, seeking to enforce, or penalizing the consumer. (§ 1670.8, subd. (a)(2).)  From this, one reasonable inference is that subdivision (a)(1) renders prohibited waivers unenforceable (see *Timney v. Lin* (2003) 106 Cal.App.4th 1121, 1127 [courts will not enforce a contract to perform an act prohibited by statute]), while subdivision (a)(2) creates a cause of action against a seller that takes affirmative steps against the consumer.

Plaintiffs direct us to committee reports generally stating that "the bill," as amended, established civil penalties for violations.  (See Sen. Rules Com., Off. of Sen. Floor Analyses, 3d reading analysis of Assem. Bill No. 2365 (2013–2014 Reg. Sess.) as amended Aug. 11, 2014, p. 2 [concerning civil penalty for violations of "provisions of this bill"]; Assem. Conc. Sen. Amends. to Assem. Bill No. 2365 (2013–2014 Reg. Sess.) as amended Aug. 11, 2014, p. 1 [providing that any person "who violates the bill" shall be subject to civil penalties].)  They contend these references show that violations of subdivisions (a)(1) and (a)(2) were intended to be independently actionable.  These conclusory statements are insufficient to carry plaintiffs' burden to show the statute as enacted gives them a clear right to sue for a violation of subdivision (a)(1) alone.  (*San Diegans, supra,* 8 Cal.5th at p. 739; *Mayron, supra*, 54 Cal.App.5th at p. 573.)

In sum, plaintiffs in this case have not shown there is a private right of action under section 1670.8 for solely including language proscribed by subdivision (a)(1) in a contract within the law's scope.  Plaintiffs did not allege that defendants engaged in conduct prohibited by subdivision (a)(2) and do not contend they could amend their complaint to do so.  The trial court properly sustained the demurrer without leave to amend.

11

## DISPOSITION

The judgment is affirmed.  Defendants shall recover their costs on appeal.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


MORI, J.

We concur:


ZUKIN, P. J.


TAMZARIAN, J.